Lee BURNS, Appellant,

v.

Charles E. OWENS et al., Respondents.

No. 54700.

Supreme Court of Missouri,
Division No. 2.

Nov. 9, 1970.

---◆---

Gerhard & Reardon, St. Louis, for appellant.

Orville Richardson, St. Louis, for respondents.

STOCKARD, Commissioner.

Plaintiff filed suit for personal injuries in the amount of $43,950 against Dr. Charles E. Owens, Dr. W. A. Rohlfing, Dr. J. A. Armantrout, Mineral Area Hospital, Inc., and Don Stewart, administrator of the hospital. The trial court sustained the pretrial motion of Mineral Area Hospital for summary judgment on the basis of the charitable immunity doctrine. At the close of the evidence in the trial as to the individual defendants the trial court directed a verdict in favor of each. Plaintiff's motion for new trial pertained only to the judgment in favor of Dr. Owens, Dr. Armantrout, and the Mineral Area Hospital. It was overruled and plaintiff has appealed. There is no issue on this appeal as to the judgment in favor of Dr. Rohlfing and Don Stewart.

On September 29, 1964, Dr. Owens performed a hemorrhoidectomy on plaintiff at the Mineral Area Hospital, and he made arrangements with Dr. Armantrout to assist in the postoperative care. Dr. Owens wrote orders in the hospital record of plaintiff which authorized intramuscular injections of demerol every four to six hours as needed for pain. The record shows only that Dr. Armantrout wrote some "orders." It does not show that they pertained in any way to the act which plaintiff contends was negligently performed and which resulted in his injury.

During the late evening of September 30 or early morning of October 1, plaintiff summoned a nurse and asked that he be given "something" for pain. The nurse then made an injection with a "hypo" needle in the lower portion of his left arm between the elbow and shoulder. His hand "just went limp; went dead." His wrist "dropped," his hand and arm felt as though they had "gone to sleep," and he had no feeling. He told the nurse about the condition and she rubbed his hand and assured him it would be all right. Plaintiff subsequently had three hospitalizations and two operations in an effort to correct the situation with his hand and arm. A neurological surgeon, a neurologist, and a physician testified that the cause of the injury to plaintiff's arm was the injection of the needle into the lower third of the upper arm instead of the muscular area near the shoulder. Dr. Owens testified that it was "against the rules" to make the injection where it was made, and to do so would not be "reasonably skillful" but would constitute "no skill at all."

At the close of plaintiff's evidence the trial court directed a verdict for the individual defendant doctors who are now respondents on the basis that the nurse who administered the injection in plaintiff's arm was not their agent or servant. Plaintiff contends on this appeal that since Dr. Owens and Dr. Armantrout "ordered and directed the nurse to administer the injection * * * there is and was no requirement to show an employer-employee relationship between [them] and [the] nurse." We note here, however, as previously set out that the record does not show any such order or direction by Dr. Armantrout, and the orders of Doctor Owens pertaining to postoperative care, which included the intramuscular injection of demerol, was not directed to the nurse who made the injection, or for that matter to any particular person. The orders were written on the hospital record pertaining to the plaintiff.

◼ Plaintiff makes no contention that Doctor Owens was negligent in authorizing the use of demerol or that the amount prescribed was improper. Neither does he

contend that the nurse was the actual employee of either doctor, Hale v. Atkins, 215 Mo.App. 380, 256 S.W. 544; Annotation at 12 A.L.R.3d at p. 1020, or that she was acting under the personal control and direction of either doctor. Plaintiff does assert that "at the time the nurse negligently injected the needle into plaintiff she was the servant of defendants Owens, Armantrout and Mineral Area Hospital." We agree as to the hospital, but not as to Dr. Owens or Dr. Armantrout. Plaintiff relies on the "borrowed servant" doctrine, but we conclude that it is inapplicable under the facts. This is not the case where during an operation or other treatment of a patient by the doctor the nurse, who was an employee of the hospital, was assisting the doctor or acting under his direct and personal supervision, such as in McKinney v. Tromly, Tex.Civ.App., 386 S.W.2d 564, 12 A.L.R.3d 1011. Also, there is no contention by plaintiff that either doctor knew or should have known that postoperative instructions left with the hospital would be carried out by incompetent personnel, see Hale v. Atkins, supra, or that such instructions would not be carried out as prescribed in a manner consistent with acceptable medical practices. Plaintiff's contention, as we understand it, is that the nurse was negligent in making the injection at the place she did, and that since Doctor Owens arranged for the admission of plaintiff to the hospital and he and Dr. Armantrout (but there is no such evidence as to Dr. Armantrout) prescribed the injection of demerol, if needed for relief from pain, they each are vicariously liable for the negligence of the nurse who was an employee of the hospital. With this contention we do not agree.

As a general rule a physician is not liable for the negligence of hospital nurses, attendants, or interns who are not his employees unless they perform work or duties for him under his supervision and control, or unless he is negligent in permitting them to attend the patient, or unless the negligent acts were performed under conditions where, in the exercise of ordinary care, he could or should have been able to prevent their injurious effects and did not do so. "The mere fact that a physician or surgeon gives instructions to a hospital employee does not render the physician or surgeon liable for negligence of the hospital employee in carrying out the instructions." 70 C.J.S. Physicians and Surgeons § 54. See also the numerous cases cited in the annotation, entitled "Liability of operating surgeon for negligence of nurse assisting him," at 12 A.L.R.3d 1017, and particularly in § 4 thereof beginning at p. 1021.

Plaintiff cites and relies on Restatement of the Law, Agency 2d, § 267, and Campbell v. Preston, Mo., 379 S.W.2d 557.

The part of the Restatement relied on by plaintiff pertains to liability of a person for the negligence of another when that person "represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent." Assuming this rule is otherwise applicable to the factual situation of this case, there is no evidence to authorize such a finding. In Campbell v. Preston, supra, it is stated that "Where a person actively participates as by expressly ordering or directing the act which proves to be negligent or wrongful, such person is liable to a third person damaged thereby even though the relation of employer and employee does not exist between the one who directs the act and the one who performs it." In this case Dr. Owens did not direct the act which was negligent. He authorized the injection of demerol for pain, but that was not the act claimed to have been negligent. He did not direct that it be injected in the place selected by the nurse, and there is no evidence that would authorize a finding that he knew or should have known that his instructions would not be carried out according to acceptable medical practices.

We conclude that the trial court correctly directed a verdict in favor of Dr. Owens and Dr. Armantrout.

Plaintiff next contends that the trial court erred in entering summary judg-

ment in favor of the Mineral Area Hospital for the reason it did because "the doctrine of charitable immunity has been abolished in Missouri," and "prospective application of the abolition of the doctrine of charitable immunity should not apply to this case."

In Abernathy v. Sisters of St. Mary's, Mo., 446 S.W.2d 599, this court held that "a nongovernmental charitable institution is liable for its own negligence and for the negligence of its agents and employees acting within the scope of their employment," but it also held that the "new rule [established by that case] shall apply to [that] and to all future causes of action arising after November 10, 1969, the date of the filing of [the] opinion."

Plaintiff concedes that his cause of action against Mineral Area Hospital, if any, arose prior to November 10, 1969. He argues that "while [he] recognizes the power of [this] court to declare a decision overruling a former decision as operating prospectively only, the Abernathy case is the only one which [he has found] that declares that a decision relating to substantive law shall operate prospective only." Plaintiff also argues that he challenged the correctness of the charitable immunity doctrine in the trial court, and that this appeal was pending in this court before the opinion in the Abernathy case was handed down. He contends that he "has put forth effort and made expenditures * * * in an effort to change the old rule" the same as did the plaintiff in the Abernathy case, and that he was in this court "with Abernathy but a short distance in line behind him." He also asserts that no hardship would be sustained by the Mineral Area Hospital if the rule of the Abernathy case be applied to him because at least from 1963 the hospital carried public liability insurance.

This court is aware that in any situation where a substantive right is changed, as was the result of the Abernathy case, circumstances will arise which might appear to result in hardship or discrimination. However, the line must be drawn at some point.

The various possibilities are set forth in the cases cited in the annotation at 10 A.L. R.3d 1371. After careful study and consideration this court came to the conclusion that the rule announced in the Abernathy case was the least objectionable. See the cases cited in the above annotation at 10 A. L.R.3d p. 1423, and also Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89. We conclude that the arguments advanced by plaintiff do not compel a reconsideration of the rule of prospective application as announced in the Abernathy case.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.